**UNITED STATES of America,
Appellee,**

v.

**Carl Eugene PHILLIPS, Appellant.**

**No. 75–1044.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1975.

Decided Aug. 26, 1975.

Before GIBSON, Chief Judge, HEANEY, and STEPHENSON, Circuit Judges.

GIBSON, Chief Judge.

Carl Eugene Phillips was indicted in three counts, tried to a jury and convicted of (I) knowingly receiving and possessing stolen property (firearms) in violation of 18 U.S.C. §§ 2 and 659 (1970), (II) dealing in firearms without a license in violation of 18 U.S.C. §§ 2, 922(a)(1) and 924(a) (1970), and (III) receiving and possessing firearms after having been convicted of a felony in violation of 18 U.S.C.App. § 1202(a)(1) (1970). He was sentenced to concurrent terms of three years in prison on counts I and II and to a consecutive term of three years probation on count III. He appeals, contending (1) that the trial court [1] should have given a cautionary instruction on the testimony of government witness Robert O'Rourke, whom the defendant characterizes as an interested witness comparable to an informant, and (2) that the indictment improperly pyramided offenses beyond what the defendant characterizes as "the comprehensive scheme" of the Gun Control Act of 1968, Pub.L. No. 90–618 (Oct. 22, 1968). We affirm.

All three charges against the defendant arose from a single sale of five shotguns stolen from a St. Louis, Missouri, freight yard in April, 1970. The guns were stolen out of a shipment of 240 destined from their New York manufacturer to a Missouri dealer. The issues at trial were narrowed by a stipulation that the shotguns were stolen from an interstate shipment and were valued at more than $100, that the defendant had no license to deal in firearms, that he was under a disability resulting from a 1965 felony conviction,[2] and that he had not been relieved of the disability pursuant to 18 U.S.C. § 925(c) (1970).

Herbert A. Kasten, Jr., St. Louis, Mo., for appellant.

Richard D. Billeaud, Asst. U. S. Atty., St. Louis, Mo., for appellee.

[1] The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

[2] On March 27, 1965, Phillips was convicted for unlawful possession of one-half gallon of distilled spirits, a violation of 26 U.S.C. § 5205(a)(2) (1964).

Proof that the defendant received stolen property and possessed firearms after a felony conviction (counts I and III) rested, therefore, on common issues of fact—whether on or about September 1, 1970, Phillips received and possessed shotguns knowing them to have been stolen. Additional evidence that the defendant engaged in selling the five shotguns in a manner making him a dealer, completed proof of the offense of dealing without a license (count II). The sole evidence linking Phillips to the stolen shotguns was the testimony of government witness Robert O'Rourke. Several other witnesses testified that they bought shotguns from or through O'Rourke and that O'Rourke reported buying them from Phillips. But the only link to Phillips came through O'Rourke. Phillips offered no evidence and did not take the stand.

O'Rourke testified that he met Phillips in 1970 or 1971 at the Fenton, Missouri, Chrysler plant where they both worked. Phillips, he stated, approached him in the summer or fall of 1970 to inquire whether O'Rourke was interested in purchasing a shotgun for $150. O'Rourke agreed to buy five at $125 each, paying $200 down and the balance of $425 later. A day or two later Phillips delivered the guns to the home of O'Rourke's mother. He carried the guns from the trunk of a car into the house in five factory shipping crates. Robert's brother, James O'Rourke, was present when the guns were delivered. He testified that he helped carry two of the boxes from the car into the house but could not recall how many guns were delivered, nor identify the car or the person who delivered them. Robert O'Rourke later sold three of the guns to a friend for $175 each, one to another friend for $150, and kept the fifth. The new shotguns were worth between $300 and $500 each.

I. The defendant contends that the trial court erred in failing to give, upon request, the following instruction:

The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant.

1 E. Devitt & C. Blackmar, *Federal Jury Practice & Instructions* § 12.02 (1970). Although the defendant refrains from strictly characterizing government witness O'Rourke as an informant, he requested the above cautionary informer instruction, contending that O'Rourke's interest in the case arising from his expectation of leniency for testifying affected his credibility. O'Rourke testified that if he hadn't provided the name of the seller of the guns he would have been charged and understood that upon supplying the name he would not be prosecuted for possessing or dealing in stolen firearms. Consequently, as the Government's entire proof of Phillips' possession of firearms rested on O'Rourke's implication of him, the defendant contends he was entitled to a cautionary informer instruction.

The Government responds that this court's review of the instruction must be limited to a search for plain error because Phillips failed to object to the challenged instruction by stating to the trial court "distinctly the matter to which he objects and the grounds of his objection." Rule 30, Fed.R.Crim.P. The defendant contends that he complied with Rule 30 by tendering to the trial court the standard cautionary informer instruction quoted above and stating that he had no objection to the court's chosen instruction[3] "other than" that

3. The court's instructions to the jury relating to credibility of the witnesses were as follows. In its *introductory remarks* to the jury prior to trial the court stated in part:

In considering the weight and value of the testimony of any witness you may take into consideration the appearance, attitude and behavior of the witness, *the interest of the*

the defendant's requested charge "better state[s] the law as regards to credibility of witnesses in this case." [4]

■ The defendant's tender of an alternative instruction, without objecting to some specific error in the court's charge or explaining why his requested instruction "better states the law," did not comply with Rule 30. *United States v. Brown,* 453 F.2d 101, 106 (8th Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *Northcraft v. United States,* 271 F.2d 184, 189 (8th Cir. 1959). The object of Rule 30 is to afford an adequate opportunity for the trial judge to correct mistakes in his charge and for the opposing party to keep the record clear of error. *Armstrong v. United States,* 228 F.2d 764 (8th Cir. 1956). No such opportunity was afforded here. It is advisable, if counsel intends seriously to challenge an

instruction, to indicate specifically why the court's instruction is erroneous and what should be done to conform the instruction to the law. Phillips' noncompliance with the rule limits our review to whether the court's omission of the instruction affected the defendant's substantial rights and was "so completely erroneous as to result in a miscarriage of justice," *Kampmeyer v. United States,* 227 F.2d 313, 322 (8th Cir. 1955); Rule 52(b), Fed.R.Crim.P., a standard rarely met.[5]

■ O'Rourke was not an informant in any sense of the term. His relationship with the Government was fully explored in cross-examination, yet the record does not suggest that he cooperated in any manner before his possession of stolen firearms came to the attention of the FBI.[6] He was merely a witness

*witness in the outcome of the case, the relation of the witness to the government or any of the defendants, the inclination of a witness to speak truthfully or not, the probability or improbability of the witness' statements, and all other facts and circumstances in evidence. Thus, you may give the testimony of any witness just such weight and value as you may believe the testimony of such witness is entitled to receive.* (Emphasis added.)

In its *jury charge* after the close of evidence the court stated in part:

The jurors are the sole judges of the weight and credibility of the testimony and of the value to be given to each and any witness who has testified in the case. *In reaching a conclusion as to what weight and value you ought to give to the testimony of any witness who has testified in the case, you are warranted in taking into consideration the interest of the witness in the result of the trial;* take into consideration his or her relation to any party in interest; his or her demeanor upon the witness stand; his or her manner of testifying; his or her tendency to speak truthfully or falsely, as you may believe; the probability or improbability of the testimony given; his or her situation to see and observe; and his or her apparent capacity and willingness to truthfully and accurately tell you what he or she saw and observed; *and if you believe any witness testified falsely as to any material issue in this case, then you must reject that which you believe to be false, and you may reject*

*the whole or any part of the testimony of such witness.* (Emphasis added.)

4. The exchange between counsel and the court in chambers relating to the instruction on credibility was as follows:

THE COURT: Gentlemen, I am going to go over these by the numbers we just gave them.

\* \* \* \* \* \*

My instruction No. 2 is the credibility of the witnesses. If you have any objection, state it.

MR. KASTEN (counsel for the defendant): No, other than the fact, your Honor, that I have offered Defendant's request for instructions numbered B and C, and I feel that they better state the law as regards to credibility of witnesses in this case.

THE COURT: I will refuse B and C and so mark them.

5. For, as stated in *Armstrong v. United States, supra* at 768:

The plainer an error in a charge to the jury is, the more likely it is that the error will be corrected by the trial court if its attention and that of opposing counsel is specifically directed to the error.

6. The FBI apparently began its investigation when a subsequent purchaser of one of the five shotguns, suspecting it to be stolen, voluntarily surrendered it to the local authorities. The FBI interviewed O'Rourke soon thereafter and he surrendered the gun he had kept for himself.

in the chain of possession, and probably a reluctant one at that, who became enmeshed in the transfer of the stolen guns. He did not receive a formal grant of immunity from prosecution, but thought he had been promised immunity for agreeing to testify against the defendant.[7] That limited understanding, however, did not transform him into an informant. *United States v. Smith,* 464 F.2d 221 (8th Cir. 1972). The fact that O'Rourke thought he had been granted immunity was fully brought to the jury's attention and the trial court adequately instructed the jury to consider the witness' interest. The general instruction on credibility of the witnesses was adequate. The matter of credibility was for the jury's determination.

■ II. We find no merit in the defendant's contention that he was indicted under the wrong statutes or that he was the victim of a pyramiding of offenses. He was charged in three counts with separate offenses under three statutes. He argues, however, that all three offenses are punishable under individual sections of one statute, Chapter 44 of Title 18, 18 U.S.C. § 921 *et seq.* (1970), as amended by the Gun Control Act of 1968, Pub.L. No. 90–618 (Oct. 22, 1968), and that the charges should have been confined to that statute's "scheme." He contends that pyramiding the indictment with offenses from outside the scheme of 18 U.S.C. § 922 contravened congressional intent and denied him due process.

For support, defendant relies on cases applying the federal bank robbery statute, 18 U.S.C. § 2113 (1970). That Act is recognized to have created a comprehensive scheme for punishing persons who rob federally insured banks. *United States v. Canty,* 152 U.S.App.D.C. 103, 469 F.2d 114 (1972). In drafting § 2113, Congress intended to limit federal bank robbery prosecutions to a single count charging the appropriate level of crime and precluding additional charges for conduct within § 2113's coverage under statutes outside the scheme. *United States v. Canty, supra.*

■ As for the Gun Control Act of 1968, however, neither its language nor its legislative history[8] indicates congressional intent to create a comprehensive scheme similar to that of § 2113. 18 U.S.C. § 922, unlike § 2113, does not subdivide firearms offenses into a cohesive series of steps displaying a continuum of increasingly serious criminal conduct with increasing penalties for each more aggravated offense. Thus, despite the fact that Phillips' potential punishment in the instant case was increased by the Government's choice of statutes, that choice did not contravene any discernible congressional intent and did not deny the defendant due process.

■ Specifically, Phillips challenges the choice of statutes charging offenses in counts I and III. Count I charged him with knowingly receiving and possessing stolen property in violation of 18 U.S.C. §§ 2 and 659,[9] a general statute

7. In cross-examination O'Rourke acknowledged that he initially refused to identify his supplier to the FBI. However, after being threatened with prosecution and promised by the prosecutor that he would not be charged if he cooperated, O'Rourke identified Phillips as the man who sold him the guns and agreed to testify. In redirect examination O'Rourke stated, "I was led to believe if I told the truth that I wouldn't be prosecuted. That's all I was led to believe."

8. *See generally* S.Rep.No.1097, 90th Cong., 2d Sess., *reprinted in* 2 U.S.Code Cong. & Admin. News 2112, 2163–69 (1968); H.R.Rep.No. 1577, 90th Cong., 2d Sess., *reprinted in* 3 U.S. Code Cong. & Admin.News 4410 (1968).

9. Section 659 reads in pertinent part:

Whoever embezzles, steals, or unlawfully takes, carries away, or conceals * * * from any * * * railroad car * * * or depot * * * with intent to convert to his own use any goods or chattels moving as or which are a part of or which constitute an interstate or foreign shipment of freight, express, or other property; or

Whoever buys or receives or has in his possession any such goods or chattels, knowing the same to have been embezzled or stolen * * *

* * * * * *

Shall in each case be fined not more than $5,000 or imprisoned not more than ten years, or both[.]

governing thefts from interstate shipments. By comparison, § 922(j) contains a provision relating specifically to stolen firearms, proscribing receipt of a firearm by a person with "reasonable cause to believe" that it was stolen.[10] This lesser offense carries a lighter penalty than does § 659 but requires proof of a lesser mental state. Absent a congressional scheme limiting its choice of statutes, such as that of § 2113, the Government was free to charge Phillips under § 659. If a defendant's conduct is punishable under two or more statutes and the Government chooses the one providing a harsher penalty, the defendant cannot complain. *United States v. Eisenmann,* 396 F.2d 565 (2d Cir. 1968).

■ Count III of the indictment charged Phillips with receiving and possessing firearms after having been convicted of a felony, a violation of 18 U.S.C.App. § 1202(a)(1).[11] Phillips notes that § 922(h)(1) contains a similar provision, carrying a greater maximum penalty, also prohibiting receipt of firearms by a felon.[12] However, any doubt that the Government was free to choose either statute is resolved by the fact that Congress enacted both statutes simultaneously. Both 18 U.S.C. § 922(h)(1) and 18 U.S.C.App. § 1202(a)(1) were reenacted without relevant change by different titles of the Gun Control Act of 1968. If Congress intended § 922 to be comprehensive to the exclusion of § 1202(a)(1) for punishing identical conduct, it is inexplicable why it would reenact both statutes in the same Act.[13] The three charges against the defendant were lawfully joined in the indictment. See Rule 8(a), Fed.R.Crim.P.

The judgment of conviction is affirmed.

HEANEY, Circuit Judge (concurring).

While I agree with the majority that O'Rourke was not technically an informant, there was ample reason to suspect his veracity. His testimony was received only after he was threatened with prosecution and promised dismissal of the charges for his cooperation. Contrary to *United States v. Smith,* 464 F.2d 221 (8th Cir. 1972), relied upon by the majority, there was here a direct link between the testimony received and the promised governmental action. The better practice would have been to give the requested instruction. *See Joseph v. United States,* 286 F.2d 468, 469 (5th Cir. 1960), *cert. denied,* 372 U.S. 979, 83 S.Ct. 1114, 10 L.Ed.2d 144 (1963); *United States v. Masino,* 275 F.2d 129, 132–133 (2nd Cir. 1960); *United States v. Becker,* 62 F.2d 1007, 1009 (2nd Cir. 1933). Had the error been properly preserved pursuant to Federal Rule of Criminal Procedure 30, a new trial would be required.

The error does not in this case amount to a miscarriage of justice reversible un-

10. Section 922(j) states in pertinent part:
   (j) It shall be unlawful for any person to receive * * * any stolen firearm * * * which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm * * * was stolen.
   The offense carries a maximum penalty of imprisonment for not more than 5 years and/or a fine of not more than $5,000. 18 U.S.C. § 924(a) (1970).

11. Section 1202(a)(1) states in pertinent part:
   Any person who—
   (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, * * * and who receives, possesses, or transports in commerce or affecting commerce * * *

any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

12. Section 922(h)(1) states:
   (h) It shall be unlawful for any person—
   (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
   * * * * * *
   to receive any firearm * * * which has been shipped or transported in interstate or foreign commerce.
   This offense carries a maximum penalty of not more than 5 years in prison and/or a fine of not more than $5,000. 18 U.S.C. § 924(a).

13. *See generally United States v. Bass,* 404 U.S. 336, 342 n. 9, 344, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

der the plain error rule. The credibility of O'Rourke was extensively challenged in cross-examination, and the closing argument of the defense focused the issue for the jury. The general credibility instruction given the jury was in this instance adequate to protect the defendant. *See United States v. Nolte,* 440 F.2d 1124, 1126 (5th Cir.), *cert. denied,* 404 U.S. 862, 92 S.Ct. 49, 30 L.Ed.2d 106 (1971); *United States v. Hoffa,* 349 F.2d .20, 52 (6th Cir. 1965), *affirmed,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Siglar v. United States,* 208 F.2d 865, 867 (5th Cir.), *cert. denied,* 347 U.S. 991, 74 S.Ct. 854, 98 L.Ed. 1125 (1954).