UNITED STATES of America,
Appellee,

v.

Seth Henry BIG CROW, Appellant.

No. 75–1164.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1975.

Decided Oct. 7, 1975.

Certiorari Denied Feb. 23, 1976.
See 96 S.Ct. 1126.

Stan Whiting, Jerry Pechota, Winner, S. D., for appellant.

David R. Gienapp, Asst. U. S. Atty., Sioux Falls, S. D., for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

The defendant, Seth Henry Big Crow, an Indian, was indicted under the Major Crimes Act, 18 U.S.C. § 1153, for assault with a dangerous weapon (Count I), assault resulting in serious bodily injury (Count II), and burglary (Count III). The alleged offenses occurred on the Rosebud Indian Reservation in the State of South Dakota. After trial by jury, the defendant was convicted as charged on Count II and of lesser included offenses on the two remaining counts. He received sentences of 90 days on Count I and three years on Count III, each to run concurrently with a five-year sentence he received on Count II.

Only the convictions on Counts II and III are challenged on appeal. The defendant argues that his conviction on Count II is invalid in that he received a greater sentence than a non-Indian could have received for the same offense, in violation of the Fifth Amendment Due Process Clause. On Count III he argues that the district court committed plain error in its instructions to the jury. The conviction on Count II is reversed and remanded for dismissal by the district court. The conviction on Count III is affirmed.

I. *Count II: Assault Resulting in Serious Bodily Injury Under 18 U.S.C. § 1153.*

The Major Crimes Act, 18 U.S.C. § 1153 [1] provides that certain offenses by

---

1. Title 18 U.S.C. § 1153 provides:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

As used in this section, the offenses of rape and assault with intent to commit rape shall be defined in accordance with the laws of the State in which the offense was committed, and any Indian who commits the offenses of rape or assault with intent to commit rape upon any female Indian within the Indian country shall be imprisoned at the discretion of the court.

As used in this section, the offenses of burglary, assault with a dangerous weapon, assault resulting in serious bodily injury, and incest shall be defined and punished in accordance with the laws of the State in which such offense was committed.

Indians within a reservation must be tried in federal courts. The Act also provides that some of these federal offenses, including assault resulting in serious bodily injury of which defendant was convicted on Count II, are to be defined and punished according to the laws of the state in which the offense was committed. In the instant case, the government selected the following South Dakota statute to define the essential elements and punishment under Count II:

> *Assault with intent to inflict great bodily injury.*—Whoever assaults another with intent to inflict great bodily injury shall be punished upon conviction thereof by imprisonment in the state penitentiary for not less than one year, nor more than five years, or in the county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment.

SDCL 22–18–12.

The defendant argues that a non-Indian who committed the same offense would be subject to a maximum sentence of six months, rather than the five years imposed on the defendant under § 1153. Thus, defendant argues that as applied here, § 1153 unlawfully discriminates against Indians in violation of the Fifth Amendment Due Process Clause and contrary to the express language of that statute, fails to "subject [Indians] to the same laws and penalties as all other persons" committing this offense "within the exclusive jurisdiction of the United States."

■ A non-Indian cannot be charged under 18 U.S.C. § 1153 so as to incorporate state law, since the Act applies exclusively to Indians. A non-Indian who commits an identical assault on a federal enclave is governed by that portion of 18 U.S.C. § 1152 which extends federal criminal jurisdiction to crimes committed by non-Indians against Indians on reservations.[2] On this basis, the defendant contends that a non-Indian would have to be charged under subsection (d) of 18 U.S.C. § 113, the federal statute proscribing assaults.[3] Thus a non-Indian committing an assault upon an Indian on the reservation is subject to only six months imprisonment, whereas an Indian committing the identical crime is subject to up to five years imprisonment. The defendant urges that he is denied equal protection of the laws in violation of the Due Process Clause of the Fifth Amendment. *Cf. Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

■ The government argues in response that a non-Indian would in fact

**2.** Title 18 U.S.C. § 1152 provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

**3.** Title 18 U.S.C. § 113 provides:

> Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:

> (a) Assault with intent to commit murder or rape, by imprisonment for not more than twenty years.

> (b) Assault with intent to commit any felony, except murder or rape, by fine of not more than $3,000 or imprisonment for not more than ten years, or both.

> (c) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by fine of not more than $1,000 or imprisonment for not more than five years, or both.

> (d) Assault by striking, beating, or wounding, by fine of not more than $500 or imprisonment for not more than six months, or both.

> (e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

be chargeable under the same state statute and subject to the same sentence as the defendant. The government asserts that the Assimilative Crimes Act, 18 U.S.C. § 13, requires this result. The Assimilative Crimes Act provides:

> Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, is guilty of any act or omission *which, although not made punishable by any enactment of Congress*, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment. (emphasis added).

Under 18 U.S.C. § 13, the government can resort to state law only if no Act of Congress makes a defendant's conduct punishable. *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958); *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). The government urges that that is the case here, for "assault resulting in serious bodily injury" is actually assault *and battery*, while 18 U.S.C. § 113 in its view covers only assault, not actual batteries.

■ We disagree. In our view, 18 U.S.C. § 113(d) makes the offense of assault resulting in serious bodily injury punishable by an Act of Congress within the meaning of the Assimilative Crimes Act so as to bar resort to state law. Section 113(d) punishes "assault by striking, beating, or wounding." [4]

The fact that an assault actually results in serious bodily injury does not preclude use of § 113(d), even though that result is not an essential element of that offense. If the government believes that the maximum punishment under § 113 is inadequate for some aggravated assaults, the remedy lies in Congress, not in substitution at the prosecutor's discretion of the state law for federal law. As the Supreme Court said in

---

**4.** In *Fields v. United States*, 438 F.2d 205 (2nd Cir. 1971), *cert. denied*, 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971), a non-Indian committed assault and battery on an Air Force Base. He was convicted under 18 U.S.C. § 13 and Ohio battery statutes. The defendant urged that since his acts were made criminal under the federal assault statute, 18 U.S.C. § 113, resort to state law was improper. The Second Circuit disagreed, saying:

> [I]t has been held that where the state statute provides a theory essentially different from that provided in the federal statute, the government can proceed on either statute. *United States v. Jones*, 244 F.Supp. 181 (S.D.N.Y.), aff'd. 365 F.2d 675 (2nd Cir. 1965). What the government may not do is proceed under the state statute when the precise act prohibited by the state statute is defined and prohibited by a federal statute, *Williams v. United States, supra*, but that is not what the government has done here.
> The applicable state and federal statutes in this case are quite different. The federal statute proscribed assaults. The Ohio law prohibits batteries. Moreover, the state statute deals with a very specific class of batteries—those involving shootings, cuttings or stabbings. The Ohio statute fits the facts of this case more precisely and it was not improper for the government to proceed under it.

438 F.2d at 207–08.

We take a different view of this matter. As we interpret *Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946), the Assimilative Crimes Act bars resort to state law when the precise conduct has been made penal by a federal law. In *Williams*, the Assimilative Crimes Act had been applied against a married non-Indian male who had apparently consensual sexual relations with an unmarried Indian girl whose age was between 16 and 18. Under Arizona law, this act constituted statutory rape so long as the female was less than 18. Under federal law, however, statutory rape required proof that the woman was less than 16. The Supreme Court held that the Assimilative Crimes Act and the Arizona definition of statutory rape were not applicable because:

> (1) the precise acts upon which the conviction depends have been made penal by the laws of Congress defining *adultery* and (2) the offense known to Arizona as that of "statutory rape" has been defined and prohibited by the Federal Criminal Code, and is not to be redefined and enlarged by application to it of the Assimilative Crimes Act.

327 U.S. at 717, 66 S.Ct. at 781 (emphasis added).

*Williams v. United States*, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946):

> [T]he Assimilative Crimes Act discloses nothing to indicate that, after Congress has once defined a penal offense, it has authorized such definition to be enlarged by the application to it of a State's definition of it. It has not even been suggested that a conflicting state definition could give a narrower scope to the offense than that given to it by Congress. We believe that, similarly, a conflicting state definition does not enlarge the scope of the offense defined by Congress. The Assimilative Crimes Act has a natural place·to fill through its supplementation of the Federal Criminal Code, without giving it the added effect of modifying or repealing existing provisions of the Federal Code.

327 U.S. at 718, 66 S.Ct. at 782.

Since § 113(d) does make penal the precise acts of an assault resulting in serious bodily injury, a non-Indian who committed the same offense as the defendant herein could not have been charged under state law and would have been subjected to a much lighter sentence than that actually received by the defendant. Two other courts of appeals have agreed that the federal enclave laws do subject an Indian to a greater penalty than a non-Indian for assault resulting in serious bodily injury, although they differed on the constitutionality of that result. *Compare United States v. Cleveland*, 503 F.2d 1067, 1071 (9th Cir. 1974) *with United States v. Analla*, 490 F.2d 1204, 1208 (10th Cir. 1974), *vacated and remanded on other grounds*, 419 U.S. 813, 95 S.Ct. 28, 42 L.Ed.2d 40 (1974).

In *Cleveland*, the Ninth Circuit reversed the conviction, stating:

> The sole distinction between the defendants who are subjected to state law and those to whom federal law applies is the race of the defendant. No federal or state interest justifying the distinction has been suggested, and we can supply none. The 1966 and 1968 amendments to section 1153 as applied to adopt Arizona law in defining and punishing assault with a dangerous weapon and assault resulting in serious bodily injury alleged to have been committed by an Indian against an Indian are violative of the equal protection requirement of the Fifth Amendment.

503 F.2d at 1071.

The Tenth Circuit affirmed the conviction in *Analla*, however, holding that the racial classification was "reasonably related" to the special relationship between reservation Indians and the federal government.

> That relationship from the beginning has been characterized as resembling that of a guardian and ward. As an incident of such guardianship the federal government has full authority:
>
> > to pass such laws . . . as may be necessary to give to [Indians] full protection in their persons and property, and to punish all offenses committed against them or by them within [federally granted] reservations.
>
> . . . Given such a perspective, we are unable to ascribe to § 1153 an invidious classification, and we conclude that appellant's argument thereon must fail.

490 F.2d at 1208.

■ We cannot agree with the Tenth Circuit in this matter. While the Supreme Court has approved legislation singling out Indians for special treatment, such special treatment must at least be "tied rationally to the fulfillment of Congress' unique obligation toward the Indians. . . ." *Morton v. Mancari*, 417 U.S. 535, 555, 94 S.Ct. 2474, 2485, 41 L.Ed.2d 290 (1974); *see also Ute Indian Tribe v. Probst*, 428 F.2d 491, 498 (10th Cir. 1970). It is difficult for us to understand how the subjection of Indians to a sentence ten times greater than that of non-Indians is reasonably related to their protection. We further question whether the rational basis test is the appropriate standard where racial classifications are used to impose burdens on a

minority group rather than, as in *Mancari*, to help the group overcome traditional legal and economic obstacles. It is a generally settled rule that the government bears the burden of showing a compelling interest necessitating racially discriminatory treatment. *Graham v. Richardson*, 403 U.S. 365, 372, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 643, 98 L.Ed. 884 (1954). The government has failed to offer any justification for this disparate treatment of Indians; it rests its case on the argument rejected above that no disparity exists. Under the circumstances, we are constrained to hold that 18 U.S.C. § 1153 cannot constitutionally be applied so as to subject an Indian to a greater sentence than a non-Indian could receive for the same offense.

## II. *Count III: Burglary.*

■ In Count III defendant was charged with burglary in the third degree under SDCL 22–32–9,[5] but he was convicted of burglary in the fourth degree under SDCL 22–32–11 submitted at his request as a lesser included offense.[6] The sole question raised by the defendant on this count is whether the district court erred in its instructions governing burglary in the fourth degree. The defendant did not submit requested instructions on the lesser included offense or object to the instructions supplied by the court, as required by Fed.R.Cr.P. 30. Under the circumstances, the conviction must be affirmed unless the instructions constituted "plain error" under Fed.R. Cr.P. 52(b). *See United States v. Phillips,* 522 F.2d 388 (8th Cir. filed Aug. 26, 1975).

The defendant complains that the jury was not adequately apprised of the need to find entry into a dwelling house, as defined in SDCL 22–32–14, as a prerequisite to conviction of the lesser included offense. The instruction given by the district court stated:

> Every person who breaks and enters *the dwelling house* of another at anytime in such manner as not to constitute burglary in the third degree as defined in count III of these instructions with intent to commit the crime of assault therein as defined in these instructions, is guilty of burglary in the fourth degree.

> The essential elements of the offense of burglary in the fourth degree, each of which the Government must prove beyond a reasonable doubt, are:

> 1. That the Defendant broke or entered *a building* in which personal property belonging to another person was kept.

> 2. That he did so with the specific intent to commit a crime therein.

Transcript at 203. (Emphasis added).

■ SDCL 22–32–11 requires proof that the place broken and entered was a dwelling house rather than merely a building in which personal property belonging to another person was kept. A dwelling house is defined under South Dakota law as a building customarily used as a place of lodging in the nighttime not merely a building in which personal property is kept. SDCL 22–32–14. It is urged that the court's instruction did not fully define the elements to be proven in order to convict the defendant of fourth degree burglary. However, to find "plain error", the defendant must

---

**5.** SDCL 22–32–9 provides:

> *Breaking curtilage—Vehicles.*—A person breaking or entering at any time any building within the curtilage of a dwelling house but not forming a part thereof, or any building or part of any building, booth, tent, railroad car, vessel, vehicle as defined in § 32–14–1, or any structure or erection in which any property is kept, with intent to commit larceny or any felony, is guilty of burglary in the third degree.

**6.** SDCL 22–32–11 provides:

> *Burglary in fourth degree—Entry of dwelling house not constituting other burglary.* —Every person who breaks and enters the dwelling house of another at any time in such manner as not to constitute burglary as otherwise specified in this chapter with *intent* to commit a crime is guilty of burglary in the fourth degree. (emphasis added).

demonstrate that the instruction affected substantial rights resulting in a miscarriage of justice. *West v. United States*, 359 F.2d 50 (8th Cir.), *cert. denied*, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966).

■ The trial court's instruction sets forth the express language of the statute governing the offense of fourth degree burglary. The instruction includes the provision which requires that the place broken and entered into be a dwelling house. While the subsequent enumeration of the elements contained in the term "building" rather than "dwelling house", the instructions must be read as a whole and the error was such that it could easily have been corrected by proper exception pursuant to rule 30. There is a close relationship between the two terms; every dwelling house is a building, although as defined by South Dakota law the converse is not necessarily true. The term "dwelling house" is a commonly known term and without a specific request for further definition, it is not necessary. *Cf. United States v. Robinson*, 448 F.2d 715 (8th Cir. 1971), *cert. denied*, 405 U.S. 927, 92 S.Ct. 977, 30 L.Ed.2d 800 (1972); *Bohn v. United States*, 260 F.2d 773, 779 (8th Cir. 1958), *cert. denied*, 358 U.S. 931, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959). In our view, there was sufficient evidence to find that the defendant entered a "dwelling house" and the verdict on Count III must be sustained. We feel the partial misstatement did not affect the substantial rights of the defendant resulting in a miscarriage of justice. Under the circumstances, we reject the claim of "plain error." *See United States v. Phillips, supra.*

The judgment of conviction on Count II is hereby vacated and the cause is remanded to the district court for dismissal; the judgment of conviction on Count III is affirmed.