**UNITED STATES of America, Appellee,**

**v.**

**Ronald John HOLMES, Appellant.**

**No. 78–1464.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 20, 1978.

Decided Feb. 21, 1979.

Rehearing and Rehearing En Banc
Denied March 16, 1979.

Robert E. Oliphant, Minneapolis, Minn., for appellant.

Joseph T. Walbran, Asst. U.S. Atty., Minneapolis, Minn., argued, Andrew W. Danielson, U.S. Atty., on brief, for appellee.

Before LAY, ROSS and McMILLIAN, Circuit Judges.

ROSS, Circuit Judge.

Appellant Holmes was convicted on three counts (Counts II, III, and IV) of illegally receiving firearms in violation of 18 U.S.C. §§ 922(h) and 924(a).[1]

Two of the guns (Counts II and III) which Holmes received had been stolen in the January 30, 1978 robbery of a hardware store in Pequot Lakes, Minnesota. The third gun (Count IV) was found at Holmes' residence, but was not from the hardware store. A variety of items had been stolen in the hardware store burglary, including ammunition, stereo equipment and watches.

Holmes' residence at 3003 Morgan Avenue North in Minneapolis was searched pursuant to a warrant on January 31; the guns from Counts II and IV were seized. Holmes was arrested on February 9 while leaving a woman's residence at 3310 Thomas Avenue North. This residence was searched with her permission, and the Count III firearm, a .30–30 caliber rifle from the hardware store, was seized.

The search warrant for appellant's residence was based on an affidavit by David Kendall, another felon and an acquaintance of Holmes. Kendall told federal agents about the guns at Holmes' residence after Kendall was himself arrested for trying to sell a gun to ATF undercover agents. Kendall told the agents he had received the gun from Holmes earlier in the day.[2] Kendall was among those testifying at trial, as was Holmes himself.

Holmes raises numerous issues, many relating to trial and pretrial matters, and one relating to sentencing.

### Search of Holmes' Residence

Holmes challenges the sufficiency of the warrant to search his residence based on information supplied by Kendall. He asserts there was no probable cause, and that Kendall's information should not have been

---

1. Holmes had been indicted on two additional counts. He was acquitted on one count arising under § 922(h). A fifth count, for illegal possession of firearms in violation of 18 U.S.C. App. § 1202(a)(1), was dismissed prior to trial.

Holmes was sentenced to concurrent five year terms on Counts II and III, followed by a five year consecutive term on Count IV.

2. The firearm Kendall tried to sell was the basis for Count I, on which Holmes was acquitted.

relied upon because Kendall was a scurrilous felon, eager to blame someone else when caught with a contraband gun.

We address the adequacy of information provided to an affiant under the two-prong *Aguilar* test. A magistrate reviewing an affidavit based on information supplied by an informant must be told:

> [1] some of the underlying circumstances from which the informant concluded that the [firearms] were where he claimed they were, and
>
> [2] some of the underlying circumstances from which the officer concluded that the informant * * * was "credible" or his information "reliable."

*Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964).

■ The first prong is clearly satisfied by Kendall's personal observation of the firearms at Holmes' residence. *United States v. Gavic,* 520 F.2d 1346, 1350 (8th Cir. 1975); *United States v. Marchildon,* 519 F.2d 337, 341 (8th Cir. 1975).

The second prong requires that we question the circumstances establishing Kendall's credibility, or the reliability of his information.

■ In the present case there was no averment that the informant had previously provided correct information to the police, a circumstance which generally satisfies the reliability requirement. *See United States v. Scott,* 545 F.2d 38, 40 (8th Cir. 1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977). Such an averment is not, however, necessary in every case, and other information may support the belief that the informant's tip is truthful.

■ First, as in *United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the affidavit here purported to relate the personal observations of the informant: Kendall was shown both guns and ammunition inside Holmes' residence with Holmes present. The affidavit disclosed that Kendall earlier agreed to trade a shotgun to the agents for a .38 caliber pistol and did in fact deliver a shotgun to the agents which he said he had received from Holmes.

Second, the affiant-policeman related facts within his knowledge relative to the defendant's reputation. An affiant's knowledge of a defendant's reputation is a "practical consideration" upon which "an officer (or a magistrate) may properly rely in assessing the reliability of an informant's tip." *United States v. Harris, supra,* 403 U.S. at 583, 91 S.Ct. at 2081. (Opinion of Burger, C. J.)[3]

Additionally, Kendall's tip contained admissions against his penal interest. After being caught selling a firearm, Kendall's further admission that he had observed numerous guns, ammunition and watches, that he'd been told they were stolen, and that all these items were offered to him at half price, potentially implicated him in criminal activity beyond the possession or sale of a gun to the agents. *United States v. Harris, supra,* 403 U.S. at 583, 91 S.Ct. 2075.[4]

---

3. The affiant provided the following information about Holmes' past dealings and firearms violations:

Ronald John Holmes is familiar to the agents of the Bureau of Alcohol, Tobacco and Firearms. In 1969 and 1974 he was convicted of possession of a sawed-off shotgun in U.S. District Court in the District of Minnesota, in violation of Title 26, United States Code, Sections 5861 and 5871. He was recently released from Federal prison.

4. Kendall related that:

[O]n 1–30–78, he had been at the residence of Ronald John Holmes, located at 33rd and Morgan Avenue North, which he described as the corner house, two stores, with two-car garage in back, tan and/or white color with dark trim, with a back porch that faces the garage, with a stalled Plymouth automobile in the driveway containing a license plate wired to the trunk lid. Kendall observed in a blue denim bag five (5) .22 caliber rifles, one lever-action, one a Marlin, semi-automatic, a pump-action shotgun, and a 30–30 caliber, lever-action rifle. Also, Kendall observed either an M–1 or a .270 rifle with a 20-round magazine, and other brand new Timex watches. Right behind him Holmes had a .22 caliber pistol which Kendall knew to be Holmes' personal weapon. Also observed near a chair was a green ammunition box containing ammunition, .22 caliber, and black powder. Many other brand new boxed items were observed. Holmes told Kendall that anything that was there was for sale at half price. Holmes said that the material had come from a hardware store up north, and that

Finally, the observations of surveillance officers provided some corroboration of Kendall's story, including the descriptions of Holmes' residence and the stalled car. Corroboration of these details of Kendall's story took place on the same day Kendall picked up the firearm at Holmes' residence for the sale to the agents. According to surveillance officers who watched the house later that day: "Ronald John Holmes was observed by the agents taking articles from the house to an automobile in the late afternoon. Between 6:30 and 6:45 p. m. Holmes was observed returning to the residence carrying a long object." *See United States v. Regan,* 525 F.2d 1151, 1156–57 (8th Cir. 1975).

While this corroboration, or the previously described facts, might not in and of themselves be sufficient, viewed together they did provide the magistrate with articulable information from which he could reasonably conclude that the informant was credible and his information reliable.

We conclude that there was a "substantial basis" for crediting the tip, and that the trial court did not err in refusing to invalidate the warrant. *See generally United States v. Washington,* 550 F.2d 320, 326 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977).

*Allegations of Error in Evidentiary Rulings*

Appellant Holmes contends that the trial court made two evidentiary errors, one in admitting the testimony of Holmes' probation officer, Garold Ray, and another by excluding the testimony of a defense witness, Alfred C. Villaume, who allegedly would have testified he overhead a conversation between two United States Marshals about killing the appellant Holmes.

Holmes attacks the admission of Ray's testimony on several grounds, but we consider them to be without merit. First, Holmes asserts that his communications with Ray, a probation officer, were privileged. Claims of privilege are governed by Fed.R.Evid. 501. The Rule provides that privileges of witnesses shall be governed, unless otherwise provided, "by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

■ In a federal criminal prosecution, the federal law of privileges is controlling.[5]

■ Appellant Holmes cites no authority, nor have we found any, in which a federal court has recognized a "probation officer" privilege or an analogous privilege accorded to a person in a similar role. Moreover, we see distinct dissimilarities between the probation officer-parolee relationship (and the duties of a probation officer) and that of a physician or psychologist or a lawyer in cases where those privileges have been recognized.

■ Appellant's further assertion that the probation officer failed to recite *Miranda* warnings prior to his discussion with Holmes about black powder weapons is also insubstantial. Their discussion occurred on December 30, 1977 (the burglary of the hardware store was not until January 30, 1978), and did not occur while Holmes was in custody or charged with a crime. "In such circumstances he was not entitled to the warnings required by *Miranda v. Arizona,* 384 U.S. 436, [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966)." *United States v. Paulton,* 540 F.2d 886, 891 (8th Cir. 1976).

he and another person had broken into it on Sunday. At that time Kendall had no customers for the guns.

After talking to the agents who wanted to trade a pistol for a rifle, Kendall called Holmes that evening about the trade. Holmes agreed.

On 1–31–78, Kendall again visited Holmes in the morning at his (Holmes') residence and looked at the weapons again. After making arrangements with the purchasers, whom he did not know were agents, Kendall returned to Holmes' residence and picked up the 12 gauge, pump-action shotgun that he later delivered to the agents.

5. Consequently, practice predating enactment of the rules, the Advisory Committee's version of Rule 501 and Rule 501 as enacted, are all in accord in requiring adherence to the federal law of privileges in federal criminal prosecutions.

J. Weinstein & M. Berger, Weinstein's Evidence ¶ 501[03], at 501–25 (1977).

■ Finally, the evidence concerning the black powder firearms was neither irrelevant nor unfairly prejudicial. In his discussion with probation officer Ray, Holmes admitted owning the black powder weapons. The government then used Ray's testimony to prove Holmes' possession of the *weapons in the indictment* by showing that the illegal guns were found in the same room with black powder loading equipment, in a house leased to Holmes. The black powder weapons were found in the living room. Evidence connecting Holmes with the illicit weapons was relevant because of Holmes' contention at trial that Kendall also resided in the house and that the illegal weapons were his.

■ Nor do we believe that the prejudicial aspects of Ray's testimony outweighed the probity, as Holmes contends. The court cautioned the jury "that it is not illegal for the defendant to receive or be in the possession of black powder firearms and that any evidence regarding such firearms in this trial does not go to the specific counts of the indictment against this defendant." As outlined above, the evidence was relevant. We accord deference to the trial judge's evaluation of the relative weights of prejudice and probity, and find no error. *See United States v. Matlock*, 558 F.2d 1328, 1332 (8th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977).

■ For the same considerations, the trial judge's decision to *exclude* Villaume's testimony was not error. Holmes' counsel did not seek to have the alleged murder plot against Holmes introduced for its truth, but to provide a plausible reason for Holmes' absence between the time his house was searched and he was arrested, to show Holmes' state of mind, and to rebut any inference of guilt raised by this absence.

The trial court concluded that no point had been made by the government that Holmes knowingly concealed himself or that he knew he was being sought. The court concluded that flight was not an issue in the trial, and that evidence about Holmes' state of mind[6] was irrelevant.

The trial court has broad discretion in determining the relevancy and admissibility of evidence. *United States v. Bad Cob*, 560 F.2d 877, 880 (8th Cir. 1977). Appellant has not convinced us that the proffered evidence was relevant to any viable issue, or that the court erred in the exercise of its discretion.

## *Sequestration of Agent Zamzow*

Holmes challenges the district court's refusal to sequester Agent Zamzow pursuant to the defendant's request under Fed.R. Evid. 615.[7] Defense counsel had requested that all witnesses be sequestered, including the agent, so that the agent could not tie up any "loose ends" in the testimony of the other government witnesses.

In *United States v. Boyer*, 574 F.2d 951, 955 (8th Cir. 1978), we approved the presence of an agent in the courtroom during the trial who was also a witness. Subsection (2) of Rule 615 creates an exception to the general rule of sequestration, and allows a witness to remain in court if he is an "officer or employee of a party which is not a natural person designated as its representative by its attorney * * *."

■ Agent Zamzow testified that he was employed by the Bureau of Alcohol,

---

**6.** Defense counsel agreed with the judge that there was no charge of knowing concealment, but argued that flight was a viable issue because "there was an inference that he was concealing himself because the date of the search and the date of his arrest [were] separated by nine days." Our thorough reading of the transcript supports the trial court's determination that Holmes' nine day absence was not an issue.

**7.** Fed.R.Evid. 615:

 EXCLUSION OF WITNESSES

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Tobacco, & Firearms, that he was the case agent in the case, and that he participated in the investigation of the case. The second exception to Rule 615 "is in accord with previous practice; judges routinely permitted the agent in charge of a criminal investigation to remain in court to advise the government. J. Weinstein & M. Berger, Weinstein's Evidence ¶ 615[01], at 615–7 (1977). *See also United States v. Auten,* 570 F.2d 1284, 1285 (5th Cir. 1978). Accordingly, there was no error.

*Requested Instruction on Specific Intent*

At trial the defendant Holmes requested a charge on specific intent which would have instructed the jury that the crimes charged in this case required the government to prove that the "defendant knowingly did an act which the law forbids, purposely intending to violate the law."

█ It is established that the government need not prove specific intent as an element of violations alleged under 18 U.S.C. § 922(h) or 18 U.S.C.App. § 1202(a)(1):

> Specific intent or knowledge of the defendant that he is violating the law is not an essential element of the crime of unlawful firearms dealing under section 922(a)(1). *United States v. Ruisi,* 460 F.2d 153, 156 (2d Cir.), cert. denied, 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972). *See also United States v. Freed,* 401 U.S. 601, 607–610, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971). Neither is it an element of a violation of 18 U.S.C.App. § 1202(a)(1). The government need only prove that the defendant is a convicted felon and that he knowingly possessed the firearm.

*United States v. Powell,* 513 F.2d 1249, 1251 (8th Cir.), *cert. denied,* 423 U.S. 853, 96 S.Ct. 99, 46 L.Ed.2d 77 (1975). *See also United States v. Turcotte,* 558 F.2d 893, 896 (8th Cir. 1977) (construing § 922(h)).

Holmes further contends however that the *indictment* erroneously included the term "knowing" and charged that, as a felon, he "*knowingly* did receive a firearm * * * in violation of Title 18, United States Code, Sections 922(h) and 924(a)." (Emphasis added.) The government concedes that the use of this phrase in the indictment was surplusage and that it had no basis in the statutory language.

█ As previously stated the law is clear that specific intent is not required in this offense, and we do not regard it as error that the trial court refused to instruct the jury otherwise. The Seventh Circuit in a similar situation reasoned as follows:

> The basis for the alleged propriety of the two instructions is the indictment's use of the terms "knowingly" and "willingly" in describing defendant's conduct. In effect, defendant argues that the Government was required to prove specific intent not because the statute demands it but because the indictment refers to specific intent.
>
> This argument is without merit. *The language of the indictment, insofar as it goes beyond alleging the elements of the statute, is mere surplusage. Such surplusage in an indictment need not be proved.*

*United States v. Greene,* 497 F.2d 1068, 1086 (7th Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975), and cases cited therein. Further, we find no aspect in which the defendant claims he has suffered prejudice because of the surplusage.

*Sufficiency of the Evidence*

Holmes was convicted on three counts of violating § 922(h) [8] for the receipt of three different weapons as a felon. Holmes does not challenge the government's proof of interstate nexus or of his status as a felon. He does contend that the evidence does not

---

**8.** § 922(h) makes it unlawful for a person:

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

establish receipt by him or any connection between him and the firearms, and that the evidence in fact proved that the guns were Kendall's.

 Well-established standards govern appellate review of the jury's verdict which have been stated by this court in many cases. *See Durns v. United States,* 562 F.2d 542, 545–46 (8th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977). We have carefully read the transcript in this case and find no basis on which we could properly overturn the jury's verdict. Two of the three weapons were found in the house that Holmes had leased, which also contained other possessions of his including the black powder firearms, pictures of him, and his clothes. The third weapon was taken from another residence, where Holmes was arrested, and was wrapped in an orange bedspread. Found in the same bedroom with that firearm were three boxes of ammunition from the burglarized hardware store. Surveillance agents who watched the house Holmes *leased* identified Holmes as the individual who had carried "a long rigid object wrapped in what appeared to be a pink or a bleached red colored cloth to the trunk of the car * * *."

Holmes in his testimony admitted that he had prior involvement with the Count IV weapon before a 1974 arrest. Kendall then testified that Holmes had taken the Count IV weapon from the Dorothy DuBois residence on January 28. The gun was later found in the January 31 search of the house Holmes leased, in the basement with some of Holmes' black powder equipment.

The most direct testimony against Holmes is David Kendall's. Kendall links Holmes directly with two of the firearms by relating his story that Holmes burglarized the hardware store and then offered the items to Kendall at half price. Numerous items other than weapons such as watches, tape players, speakers and police scanners, all of which had been taken from the hardware store, were found when ATF agents entered and searched the house Holmes leased.[9]

Holmes argues that there was some evidence which showed that Kendall resided at the leased house as well, and that Kendall, a multiple felon who allegedly had considered murdering Holmes and had a history of mental problems, could not and should not have been believed about the robbery. While we agree that Kendall was not a savory witness, the jury apparently credited his testimony as it was entitled to do; and, in this regard we note that Holmes was himself at the time of trial a multiple felon.

> In *United States v. Miles,* 472 F.2d 1145, 1146–47 (8th Cir.), *cert. denied,* 412 U.S. 907, 93 S.Ct. 2299, 36 L.Ed.2d 972 (1973), this court observed that the credibility of witnesses is to be determined by the jury, *even where strong impeaching testimony has been presented. See also United States v. May,* 419 F.2d 553, 554–55 (8th Cir. 1969).

*United States v. Lanier,* 578 F.2d 1246, 1251 (8th Cir. 1978) (emphasis added).

Viewing the evidence in the light most favorable to the verdict, we conclude that the jury could appropriately find that Holmes had received the weapons as charged. *See United States v. Haley,* 500 F.2d 302, 304 (8th Cir. 1974) and *United States v. Kurck,* 552 F.2d 1321, 1323 (8th Cir. 1977).

### Sentencing

 Finally we address Holmes' attack on his sentence. This attack is based on the fact that § 922(h) and § 1202(a) proscribe *identical* conduct—receipt of firearms by a felon—but provide for widely varying penalties. Section 1202(a) has an upper limit of two years as a penalty, while § 922(h) permits imposition of up to five years imprisonment on a convicted defendant. Holmes decries the availability of this discrepancy in the hands of a prosecutor, and challenges the use of the § 922 penalty on due process and equal protection grounds.

Holmes has raised a serious issue, but it is our conclusion that a previous panel of this

---

9. Holmes was not present at the leased house when the search was made.

court has spoken on this issue and has effectively decided that the prosecutorial choice presented by the two statutes is not impermissible:

> Count III of the indictment charged Phillips with receiving and possessing firearms after having been convicted of a felony, a violation of 18 U.S.C.App. § 1202(a)(1). Phillips notes that § 922(h)(1) contains a similar provision, carrying a greater maximum penalty, also prohibiting receipt of firearms by a felon. However, any doubt that the Government was free to choose either statute is resolved by the fact that Congress enacted both statutes simultaneously. Both 18 U.S.C. § 922(h)(1) and 18 U.S.C.App. § 1202(a)(1) were reenacted without relevant change by different titles of the Gun Control Act of 1968. If Congress intended § 922 to be comprehensive to the exclusion of § 1202(a)(1) for punishing identical conduct, it is inexplicable why it would reenact both statutes in the same Act. The three charges against the defendant were lawfully joined in the indictment. See Rule 8(a), Fed.R.Crim.P.

*United States v. Phillips*, 522 F.2d 388, 393 (8th Cir. 1975). *Accord United States v. Thrasher*, 569 F.2d 894, 895 (5th Cir. 1978); *Mauney v. United States*, 454 F.2d 273, 274 (6th Cir. 1972).

We have carefully reviewed the case Holmes relies upon, *United States v. Batchelder*, 581 F.2d 626 (7th Cir. 1978), which effectively presents the opposing viewpoint. *See also United States v. Hairston*, 437 F.Supp. 33 (N.D.Ill.1977). We are also aware that the Supreme Court has very recently granted certiorari in *Batchelder* and will resolve this troublesome issue in the next term of court. *See United States v. Batchelder*, 581 F.2d 626 (7th Cir. 1978), *cert. granted*, — U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979). Pending a decision of the Supreme Court to the contrary, we conclude that Holmes' prosecution and sentencing under § 922 was not impermissible.

The judgment of conviction is affirmed.