**UNITED STATES of America,**
**Appellee,**

v.

**Phillip E. WINDSOR, Appellant.**

**No. 13346.**

United States Court of Appeals
Fourth Circuit.

Nov. 6, 1969.

---

Charles Philip Brown [Court-appointed counsel] on brief, for appellant.

Stephen H. Sachs, U. S. Atty., and Stephen D. Shawe, Asst. U. S. Atty., on brief, for appellee.

Before SOBELOFF, BOREMAN and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

Phillip Windsor was convicted, under 18 U.S.C. § 2314, of interstate transportation of falsely made and forged securities. The indictment recited five forged checks which were cashed between December, 1967 and January, 1968 at various places in the metropolitan area of Baltimore. On this appeal, Windsor makes four assertions of error, but we find them without substance.

First, appellant claims that the District Judge should not have refused to propound a certain requested voir dire question. Although the Judge asked four out of the five questions offered by the defendant, he declined the fifth, which was "if you owned a business would you hire a man or woman for a position of trust if he or she had a prior criminal record?" The District Judge reasoned that one's hesitation to hire a person convicted of crime does not af-

fect his ability to be fair as a juror in judging a defendant's guilt or innocence. Moreover, two other questions were asked which did probe the possible effect of a defendant's prior convictions on a juror's impartiality. The conduct of a voir dire is within the discretion of the trial judge. Yarborough v. United States, 230 F.2d 56, 63 (4th Cir. 1956). In this case the judge's ruling was eminently reasonable, and we find no fault with it.

 Second, defendant complains of the testimony of the FBI agent in charge of the case, who was permitted to remain at the counsel table throughout the trial while other witnesses were sequestered. The discretion of the District Judge to permit a government agent to be excepted from sequestration is not unlimited. Only recently we have had occasion to delineate some guidelines to meet this recurrent problem. United States v. Frazier, 417 F.2d 1138 (4th Cir. October 14, 1969). In this case, however, the agent merely explained why some checks were not sent for laboratory evaluation while others were. He was not subjected to cross-examination. It appears that rather than an intended part of the prosecution's case from the outset, the agent's testimony was elicited to clear up a possibly confusing point arising unexpectedly at the close of the Government's case.[1] Moreover, the testimony was not the type which could have been seriously shaken by a cross-examination made potent by sequestration. At any rate it was hardly of crucial significance. Accordingly, we find no abuse of discretion in the ruling of the trial judge.

 Third, the prosecution introduced evidence—fingerprints and the testimony of an alleged confederate— relating to two checks cashed at the Provident Loan Company. Neither check was mentioned in the indictment, and appellant argues that reception of this testimony was fatal error. However, it is the long-settled rule that evidence of criminal conduct not alleged in the indictment may be adduced when it is closely related in time and place and tends to establish a plan or design out of which the crime charged originated. United States v. Chase, 372 F.2d 453, 460 (4th Cir. 1967); Lovely v. United States, 169 F.2d 386 (4th Cir. 1948). That standard is met here. The testimony established that the passing of stolen checks at the Provident Loan Company was accomplished within the time period, in the same manner and with the aid of the same confederates as in the instances of criminal activity specified in the indictment. Blank checks, stolen from a certain print shop in Baltimore were used in all instances. The scheme hatched by the defendant and his confederates embraced the offenses committed at Provident as well as those formally charged.

 Fourth, appellant contends that the evidence was insufficient to support the verdict. He highlights the fact that the foundation of the Government's case was the testimony of two alleged accomplices, one of whom admittedly was promised immunity. Although appellant concedes that even the uncorroborated testimony of one accomplice would be legally sufficient, he admonishes us to scrutinize the testimony with the greatest suspicion. This caution is in order, but the prosecution's proof was ample to withstand the scrutiny, not only of the court in its rulings upon admissibility, but also of the jury in judging its weight. We agree with the District Judge who found the evidence legally sufficient for submission to the jury.

There was other incriminating evidence. Defendant's fingerprints were found on some of the checks. Appellant readily explains: when the checks were originally stolen he was offered partici-

---

1. The FBI fingerprint expert had testified about defendant's fingerprints on certain checks, without mentioning others. The prosecution therefore called to the stand the agent in charge to explain why the other checks had not been examined.

pation in the plot, but after leafing through the checks (and incidentally leaving the tell-tale marks) he declined the offer. Having thus accounted for his fingerprints, appellant maintains that the crucial issue is still which witness to believe—the defendant or the alleged confederates who, he argues, could only profit from the accusations they levelled against him and who, drawing upon their long experience as con-men, could easily fool the jury.

To be sure, the accomplices' stories were self-serving; but so was Windsor's. Appellant's explanation of the fingerprints was not convincing to the jury. At all events we find no reason to rule that the jury was compelled to accept defendant's version and disbelieve the rest of the evidence.

Affirmed.