UNITED STATES of America, Plaintiff-Appellee,

v.

Milton Dean BATCHELDER, Defendant-Appellant.

No. 77–1819.

United States Court of Appeals, Seventh Circuit.

Heard Jan. 25, 1978.

Decided July 24, 1978.

Rehearing and Rehearing En Banc Denied Sept. 12, 1978.

Appeal from S. Ill., Northern Division, Robert D. Morgan, Judge.

Charles A. Bellows, Chicago, Ill., for defendant-appellant.

John C. Carver, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS and BAUER, Circuit Judges, and McMILLEN, District Judge.*

CUMMINGS, Circuit Judge.

In March 1977, defendant was indicted under 18 U.S.C. § 922(h) on the ground that he was a previously convicted felon who, on July 31, 1975, received a .38 caliber pistol which had previously been transported in interstate commerce. A jury found defendant guilty and he received a five-year sentence. Although defendant raises five issues in seeking a new trial, his most impres-

---

* Judge Thomas R. McMillen of the Northern District of Illinois is sitting by designation.

sive point on appeal is that his constitutional rights were violated because he received a five-year sentence under 18 U.S.C. § 922(h) whereas the identical offense is proscribed by 18 U.S.C.App. § 1202(a), which carries a lesser penalty.

The essential facts that gave rise in his indictment under Section 922 can be stated briefly. On July 22, 1975, Russell Koch, Special Agent with the Treasury Department's Bureau of Alcohol, Tobacco and Firearms, went in an undercover capacity to Carl's Bar in Bellevue, Illinois, accompanied by an informant. Defendant was tending bar inside. Although the testimony at trial differed on who instigated the conversation, there was no dispute that Koch discussed with defendant a purchase of one or two firearms which were in defendant's possession and that nine days later he sold Koch a .38 caliber revolver. The parties stipulated before trial that the revolver had been shipped in interstate commerce in 1948 and that the defendant in 1960 was convicted of a crime punishable by imprisonment for a term exceeding one year.[1] He was tried and convicted under Section 922(h), which prohibits convicted felons from receiving firearms that have traveled in interstate commerce.

I. *The Choice Between the 2-Year Sentence and the 5-Year Sentence*

Because Section 1202 was part of a "last minute" amendment that was "hastily passed, with little discussion, no hearings, and no report" (*United States v. Bass*, 404 U.S. 336, 344, 92 S.Ct. 515, 520, 30 L.Ed.2d 488), it has posed several difficult problems of interpretation. See, *e. g., United States v. Bass, supra; Stevens v. United States*, 440 F.2d 144 (6th Cir. 1971). The problem posed here is that both 18 U.S.C.App. § 1202(a) and 18 U.S.C. § 922(h) prohibit one who has been convicted of a felony from receiving a firearm that previously traveled in interstate commerce but provide different penalties for that offense.

---

1. As events during the proceedings below revealed, defendant had previously pled guilty to murder and had served approximately 13 years in prison.

Section 922(h), reenacted as part of Title IV—State Firearms Control Assistance—of the Omnibus Crime Control and Safe Streets Act of 1968, provides:

"It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

to receive any firearm or ammunition which has been shipped or transported in interstate commerce."

Section 924(a) of the same statute provides for violations of Section 922 a maximum fine of $5,000 and a maximum imprisonment term of five years; defendant received the five-year maximum sentence.

18 U.S.C.App. § 1202(a), passed for the first time as Title VII—Unlawful Possession or Receipt of Firearms—of the same Omnibus Act, provides:

"Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, \* \* and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,-000 or imprisoned for not more than two years, or both."

Defendant's argument is that two statutes that proscribe the same offense and require identical proof [2] cannot subject an offender to different penalties. Apparently this argument has two dimensions, one based on statutory interpretation and the other based on potential constitutional impediments. We consider each in turn and conclude that it is impermissible to sentence a defendant for five years under Section 922(h) when he could receive only a two-year maximum sentence under Section 1202(a).

### A. *Statutory Interpretation*

Section 922(h) had its origin in Section 2(f) of the Federal Firearms Act of 1938, 52 Stat. 1250, 1251. Section 5 of that statute made the penalty a $2,000 maximum fine or imprisonment for not more than five years, or both. 52 Stat. 1252. See 1968 U.S.Code Congressional and Administrative News pp. 2112, 2205, 2207 (1968). The statute was included as part of the Act that eventually was passed under the title of the Omnibus Crime Control and Safe Streets Act of 1968.

Although Section 922(h) was a part of that Act from its introduction in the House in 1967 through June of 1968 when the Act passed both Houses and was signed into law, Section 1202 was, as the Supreme Court described, a product of a last-minute amendment. See generally *Stevens v. United States*, 440 F.2d 144 (6th Cir. 1971). After the Act had passed the House and had been reported to the Senate by the Senate Committee on the Judiciary, on the day the Senate version of the Act passed the Senate Section 1202 was offered from the floor as an amendment by Senator Long. 114 Congressional Record 14775 (1968). No specific mention of Section 922 was made in the brief debate that followed, but one general reference to Title IV does appear. Senator Dodd asked whether Senator Long's amendment was a substitute for Title IV and Senator Long replied (*Id.* at 14774):

"Mr. Long of Louisiana. This amendment would take nothing from the bill. I applaud what the committee did. This would add to the fine work the committee did in this area."

After the Act passed the Senate, the House reconsidered it in light of the Senate's changes before the bill, including both Sections 922(h) and 1202(a), was signed into law in June of 1968. In explaining Senator Long's amendment to the House, Congress-

---

**2.** While it is true that Section 1202 is not a word-for-word copy of Section 922, the Government did not argue that the two statutes had any different substantive elements, at least as applied to the receipt of a firearm by a convicted felon. See generally *United States v.*

*Hairston*, 437 F.Supp. 33, 34 (N.D.Ill.1977); *United States v. Panetta*, 436 F.Supp. 114, 129 n. 31 (E.D.Pa.1977). While the dissent notes various differences between the two statutes, it does not suggest any difference as applied to a convicted felon who receives a firearm.

man Machen said that "this provision is necessary to a coordinated attack on crime and also [is] a good complement to the gun control legislation contained in Title IV." *Id.* at 16286.

■ This brief legislative history leaves a perplexing problem of statutory construction. While it could be argued that the legislators' comments indicate that Congress intended the two titles to coexist, it is hard to imagine, and nothing in the history suggests, that the legislators if they were focusing upon these Sections could have considered Section 1202 a "good complement" to Section 922. Because we therefore find the legislative history inconclusive,[3] our determination of what meaning to give to two inconsistent provisions in the same Act rests on the application of three general principles of statutory construction. First is the principle, recently reaffirmed in *United States v. Bass*, 404 U.S. 336, 347–349, 92 S.Ct. 515, 30 L.Ed.2d 488, and applied in a discussion of these same two titles of the hastily amended Omnibus Act, that ambiguity concerning the interpretation of criminal legislation should be resolved in favor of lenity.[4] While this principle usually is applied to the interpretation of individual statutes whose phrasing is ambiguous, it also seems helpful when as here two separate parts of the same Act arguably contradict each other and therefore leave the intent of the legislators ambiguous. See 2A *Sutherland's Statutory Construction* § 47.-02.

■ To the extent that the individual sections of the Omnibus Act instead are regarded as separate enactments, a second principle of statutory construction comes into play: that a later-enacted statute can under certain circumstances serve as an implied repeal of an earlier statute. Applying this principle, it can be argued that Senator Long's amendment—Section 1202(a)—is Congress' last word on the issue of penalty because it was added to the bill after Section 922 and because it was first enacted in 1968 while Section 922 dates back 30 years earlier. While implied repeals are disfavored particularly in the absence of a manifest intent to repeal, the conflict between the two sections and the broad coverage of Section 1202 lend some support under these circumstances to the notion that the penalty in Section 1202 should predominate. See generally *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540.

■ Although these first two principles cannot be applied to these facts without some difficulty, the third and in this case most important principle seems to apply with full force. That principle is that when a "serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598. See *United States ex rel.*

---

**3.** Ironically in light of its refusal to admit that Justice Black's dissenting opinion on a subject that the majority refused to reach can lend support to a doubt of constitutionality, the dissent here argues that Justice Blackmun's statement in dissent in *United States v. Bass*, 404 U.S. 336, 356, 92 S.Ct. 515, 30 L.Ed.2d 488, that the two Sections as interpreted were identical should have put Congress on notice to take some action. Particularly when based on a dissenting opinion, this argument is contrary to the accepted notion that Congress' inaction should be given little weight in construing a statute. See 2A *Sutherland's Statutory Construction* § 49.10. Even assuming that attention should be given to Congress' inaction, doing so here merely demonstrates why reliance on such inaction is inappropriate: since the language of the *Bass* dissent implies that the whole statutes are being treated as duplicates and since the *Bass* majority makes clear that criminal provisions are to be construed with lenity, a legislator might have thought that no action was necessary to avoid use of the 5-year penalty.

**4.** As Judge Crowley noted in *United States v. Hairston*, 437 F.Supp. 33, 36 (N.D.Ill.1977), although this principle usually is applied in determining the scope of criminal statutes, it also has relevance to the determination of the penalty. Cf. *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823; *McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816; Hall, *Strict or Liberal Construction of Criminal Statutes*, 48 Harv.L.Rev. 748, 751 (1935).

*Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836. Because, as outlined in the next part of this opinion, the constitutionality of inconsistent penalties is open to serious question, this third principle, together with whatever persuasive force can be drawn from the first two principles, leads us to construe the Omnibus Act as limiting imprisonment to a maximum of two years for the offense of receiving a firearm by a convicted felon.[5] Accord, *United States v. Hairston*, 437 F.Supp. 33 (N.D.Ill.1977).

### B. *Constitutional Issues*

Justice Black's forceful dissenting opinion in *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013, joined by Justice Douglas, touches on several important constitutional protections implicated by a prosecutor's power to select one of two statutes that are identical except for their penalty provisions. Assuming that the protection against vague criminal legislation extends to the punishment provision (see *United States v. Hairston*, 437 F.Supp. 33, 35 (N.D. Ill.1977)), the statutes may be void for vagueness under the Fifth Amendment. As Justice Black suggested, "[a] basic principle of our criminal law is that the Government only prosecutes people for crimes under statutes passed by Congress which fairly and clearly define the conduct made criminal and the punishment which can be administered." 351 U.S. at 139, 76 S.Ct. at 690. At least in the absence of published guidelines by the prosecutor (see *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 281, 345 F.2d 964, 971 (1965)) (Bazelon, J., dissenting), certiorari denied, 382 U.S. 894,

86 S.Ct. 188, 15 L.Ed.2d 151, a second type of constitutional protection implicated is the due process and equal protection interest in avoiding excessive prosecutorial discretion and in obtaining equal justice. In Justice Black's words (351 U.S. at 140, 76 S.Ct. at 691):

> "The Government's contention here also challenges our concept that all people must be treated alike under the law. This principle means that no different or higher punishment should be imposed upon one than upon another if the offense and the circumstances are the same."

■ Tying these constitutional claims together are the basic concepts of separation of powers and delegation of authority. There is strong evidence that partially in order to avoid such vague penalties, excessive executive discretion and unequal justice, it is Congress' constitutional responsibility in defining a criminal offense to affix a scheme of punishment. See *United States v. Hudson*, 7 Cranch 32, 11 U.S. 32, 34, 3 L.Ed. 259; *Berra v. United States*, 351 U.S. 131, 139–140, 76 S.Ct. 685, 100 L.Ed. 1013 (Black, J., dissenting); cf. *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823. Although, apart from Justice Black's opinion in *Berra* we have found no Supreme Court opinions explicitly dealing with this precise question, the Court has emphasized that the legislature cannot shift its task of fixing punishment either to the courts (*United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 92 L.Ed. 823; cf. *Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447)[6] or apparently to

---

**5.** Because defendant was not fined, we need not decide how these arguments apply to the fact that Section 1202 allows a larger fine than Section 922. Cf. W. LaFave and A. Scott, *Criminal Law* 79 (1972).

**6.** The dissent's argument that it is "so easy for the sentencing judge to mitigate when the more punitive section is used" (*infra* at 639) necessarily depends on the unsupported contrary position that Congress' failure to establish one scheme of punishment can be excused by placing that burden on the courts. Compare *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct.

634, 92 L.Ed. 823. It is notable that in placing that burden on the sentencing judge, the dissent either assumes that the judge always will mitigate the 5-year sentence (in which case there is no need to dissent from our mitigation) or it assumes that the sentencing judge can do what the dissent does not—determine what Congress thought justifies resort to the more severe provision as opposed to selecting a punishment from a range of penalties in one statute. Further, as a practical matter, the dissent's total reliance on the sentencing judge assumes without support that all judges in selecting a sentence are completely unaffected by

administrative agencies, particularly in the absence of guidance or a clear delegation. See *United States v. Grimaud*, 220 U.S. 506, 516, 31 S.Ct. 480, 55 L.Ed. 563; see generally W. LaFave & A. Scott, *Criminal Law* 103 (1972); L. Jaffe, *Judicial Control of Administrative Action* 110 (1965).[7] It is our conclusion that at best Congress would have no more power to delegate the selection of punishment to the Attorney General than it does to the courts or to administrative agencies.[8] Because this statutory scheme, if interpreted to give meaning both to Sections 922 and 1202, would affix two separate and inconsistent punishments rather than one scheme of punishment (compare *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823), we have serious doubts about the constitutionality of that construction. See *Berra v. United States*, 351 U.S. 131, 139–140, 76 S.Ct. 685, 100 L.Ed. 1013 (Black, J., dissenting).

Consistent with the assertedly "settled rule" that the prosecutor can select which of two overlapping statutes to apply to a defendant (*United States v. Ruggiero*, 472 F.2d 599, 606 (2d Cir. 1973), certiorari denied, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398), the Government's response to defendant's challenge is to cite several cases stating that a defendant has no constitutional complaint if he is charged under a statute like Section 922 instead of one like Section 1202. *E. g., Mauney v. United States*, 454 F.2d 273 (6th Cir. 1972); *United States v. Fournier*, 483 F.2d 68 (5th Cir. 1973); *United States v. Phillips*, 522 F.2d 388 (8th Cir. 1975); *United States v. Panetta*, 436 F.Supp. 114, 129 n. 31 (E.D.Pa.1977); *United States v. Raddatz*, No. 77 CR 325 (N.D. Ill. Feb. 6, 1978). Contra, *United States v. Hairston*, 437 F.Supp. 33 (N.D.Ill.1977).

Our reading of the cases cited by defendant, as well as those that have established the "settled rule" allowing prosecutorial choice, however, is that as applied to the choice between two statutes that have identical substantive elements they are either unpersuasive or inapplicable. Some of the opinions (*e. g., United States v. Mauney, supra; Hutcherson v. United States*, 120 U.S.App.D.C. 274, 278, 345 F.2d 964, 968 (1965) (Burger, J., concurring), certiorari denied, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151) offer only an assertion that the issue was decided by the majority in *Berra v. United States, supra*. While *Berra* refused to disturb the conviction in a case apparently involving two identical statutes[9] with different penalties, the defendant on appeal in *Berra* contended only that the jury should have been given a lesser-in-

---

the statutory maximum and that no judge is inclined to select the maximum available penalty. By focusing on the effects of the sentencing choice from the perspective of the district judge, the dissent also ignores the reality that prosecutors' ability to use Section 922 at their whim gives them considerable leverage in the plea bargaining process, the results of which are not always likely to be corrected by even the most active sentencing judges. In short, the dissent's unquestioning reliance on the sentencing judge provides neither a sufficient theoretical basis for excusing Congress' failure nor a practical solution to the resulting problem; therefore it should not satisfy the serious doubts of the constitutionality of the statute.

**7.** As Justice Black noted in *Berra*, even assuming that a statute allowing a judge or jury or even perhaps an administrative agency to select from a range of penalties can be analogized to the inconsistent penalty provisions here, a statute giving a prosecutor the power to choose between inconsistent penalties is significantly more offensive than the discretion involved in selecting from a range of penalties in one stat-

ute, because the judicial and administrative processes used in the latter selection are regulated by procedural protection and are more guided. 351 U.S. at 140, 76 S.Ct. 685. Cf. *Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447.

**8.** In fact, in different contexts the Supreme Court occasionally has indicated concern over the conduct of prosecutors who face non-existent or ill-defined statutory boundaries. Cf. *Thornhill v. Alabama*, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093; *Bordenkircher v. Hayes*, 434 U.S. 357, 365, 98 S.Ct. 663, 54 L.Ed.2d 604.

**9.** As Chief Justice Burger has noted, the fact that the two sections involved later were deemed not identical does not detract from the teaching of the case. *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 279 n.2, 345 F.2d 964, 969 n.2 (1965) (Burger, J., concurring), certiorari denied, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151.

cluded offense instruction. Significantly, the Supreme Court majority expressly noted the question of the "validity of petitioner's conviction and sentence, because of the assumed overlapping" but emphasized that "[no] such questions are presented here." 351 U.S. at 135, 76 S.Ct. at 688. It was only Justice Black's dissent that reached the issue, and he argued that the Court should have decided the propriety of the sentence rather than, as the Court apparently had done, require that the defendant raise the issue in a Section 2255 proceeding. 351 U.S. at 137 n.4, 76 S.Ct. 685.

While the issue involved in this case thus was arguably present but not reached in *Berra* (except by the two Justices who would have vacated the sentence), in the other cases relied upon by the Government (e. g., *United States v. Fournier, supra*), this issue was not present. Those cases either are or rely without explanation upon cases in which the two overlapping statutes at issue did not have the same elements or standards of proof.[10] This distinction, which was first suggested by the Court in

*United States v. Beacon Brass*, 344 U.S. 43, 45, 73 S.Ct. 77, 97 L.Ed. 61, is significant because overlapping statutes and the resulting delegation of discretionary authority are unavoidable and thus a necessity in dealing with the wide variety of acts that Congress makes criminal, but there is no necessity for such a delegation when two statutes prohibit exactly the same conduct.[11] Put another way, Congress cannot be said to have abandoned its responsibility to set a penalty when it sets different penalties in overlapping statutes because in doing so it has set a different penalty for each legally distinguishable offense, but it has abandoned that responsibility, when as here, different penalties are applied to statutes prohibiting identical acts. Cf. *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823; *United States v. Petrillo*, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877; Note, 109 U.Pa.L.Rev. 67, 95 (1960). Because we therefore find the reasoning of other circuits cited by the Government to be inapplicable, we decline to follow those cases here[12] and are left with serious

10. This same distinction seems to appear in Justice Black's opinion in *Berra*, 351 U.S. at 138–139, 76 S.Ct. 685. In *Fournier*, for example, the court relied on *United States v. Chakmakis*, 449 F.2d 315, 316 (5th Cir. 1971). In *Chakmakis*, however, one of the two statutes involved required proof of a specific mental state (18 U.S.C. § 1001) while the other did not (42 U.S.C. § 408(c)). For similar cases articulating the "settled rule" of prosecutorial choice in the context of two statutes with different proofs, see *United States v. DiVarco*, 484 F.2d 670 (7th Cir. 1973), certiorari denied, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (26 U.S.C. § 7206(1) and 18 U.S.C. § 1001); *United States v. Harris*, 558 F.2d 366 (7th Cir. 1977) (18 U.S.C. § 1001 and 18 U.S.C. § 1012); *United States v. Devitt*, 499 F.2d 135 (7th Cir. 1974), certiorari denied, 421 U.S. 975, 95 S.Ct. 1974, 44 L.Ed.2d 466 (18 U.S.C. § 1621 and 18 U.S.C. § 1623); *United States v. Zouras*, 497 F.2d 1115 (7th Cir. 1974) (18 U.S.C. § 876 and 18 U.S.C. § 1503 or § 1510). Leading cases of this type from other circuits are *Ehrlich v. United States*, 238 F.2d 481 (5th Cir. 1956) (18 U.S.C. § 1001 and 18 U.S.C. § 1012), and *United States v. Eisenmann*, 396 F.2d 565 (2d Cir. 1968) (18 U.S.C. § 1001 and 26 U.S.C. § 7214(a)(7)).

11. It is true, as the Supreme Court noted in *United States v. Bass*, 404 U.S. 336, 342, 92 S.Ct. 515, 30 L.Ed.2d 488, that the two statutes

in restricting receipt do not include precisely the same set of persons and therefore are not completely identical. As applied to convicted felons, however, the Government did not contend that the definition of convicted felons in Section 922 differed from that in Section 1202. Therefore these statutes seem to violate the principle indicated to be fundamental in *Beacon Brass* and in Justice Black's *Berra* dissent because they prohibit identical conduct and allow unfettered choice in the selection of which of two penalties to apply. This case does not present the question, and we need not decide, whether Congress' statutory scheme would have been clearly valid if Section 922 were limited to those who had been convicted of more serious felonies. Further, although reading Section 922 to be limited in such a manner might be another reading that could save the constitutionality of the statutory scheme, unlike the reading proposed in the text, which draws at least some support from the notion that the two sections were meant to be complementary, we find no support whatever in the legislative history for applying Section 922 to a different class of felons.

12. Apart from the Eighth Circuit's apparent reliance in *United States v. Phillips*, 522 F.2d 388, 393 (1975), on these inapplicable cases, it is also important to note that the defendant in

doubts about the constitutionality of two statutes that provide different penalties for identical conduct.[13] Fortunately we need not reach a final conclusion on these difficult constitutional questions because, having found a possible ambiguity when the Omnibus Act is read as a whole, we can give the Act a clearly constitutional reading by requiring that defendant's sentencing be governed by Section 1202(a).

## II. *Objections to the Underlying Conviction*

■ In seeking to have his conviction vacated as well as his sentence, defendant first argues that the indictment was fatally vague. Since the indictment itself referred to all the elements of the crime, described the firearm as "a .38 caliber pistol" and stated that it had been transported from Springfield, Massachusetts to St. Louis, Missouri, the contention that the indictment should have been dismissed is frivolous. See *United States v. Slatton*, 388 F.2d 676, 677 (6th Cir. 1968); *United States v. Lent*, 432 F.2d 440 (4th Cir. 1970); Federal Rule of Criminal Procedure 7(c)(1). As the defendant virtually admits in his brief (Br. 10), the Government's bill of particulars, which described the weapon in further detail and stated the date of the shipment in interstate commerce, was sufficient to advise the defendant of the evidentiary details of the offense, even if the indictment did not. See *United States v. Branan*, 457 F.2d 1062, 1063–1064 (6th Cir. 1972). Defendant's argument that the indictment was not sufficiently specific to provide double jeopardy protection is similarly meritless in light of the fact that the entire record of a trial can be used in adjudicating a double jeopardy claim. See *Russell v. United States*, 369 U.S. 749, 764, 82 S.Ct.

1038, 8 L.Ed.2d 240; *United States v. Henry*, 504 F.2d 1335 (10th Cir. 1974).

■ The defendant also assails the trial court's conduct at the voir dire on the ground that Judge Morgan should have inquired of prospective jurors whether they had previously served as jurors in criminal trials and whether defendant's prior felony conviction might prejudice them against him. We have recently held that it is within a trial court's discretion whether to ask the jurors about prior jury service. *United States v. Staszcuk*, 502 F.2d 875, 882 (7th Cir. 1975); 517 F.2d 53, 60 n.20 (7th Cir. 1975) (*en banc*), certiorari denied, 423 U.S. 837, 96 S.Ct. 65, 46 L.Ed.2d 56.

■ As to the district judge's failure to interrogate the jurors about defendant's prior felony, the voir dire shows that he first read the jurors the brief indictment which states that defendant had been "convicted on November 14, 1960, of a crime punishable by a prison term of one year." Shortly thereafter, without expressly mentioning defendant's prior felony, he asked the jurors seven questions with respect to their possible prejudice. Our reading of the transcript satisfies us that although asking at least some specific questions may be the better practice (see *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), certiorari denied, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706), this use of a series of questions following reference to defendant's conviction cannot be termed an abuse of discretion. See *United States v. Rojas*, 537 F.2d 216, 219 (5th Cir. 1976), certiorari denied, 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777; *United States v. Brewer*, 427 F.2d 409 (10th Cir. 1970); *United States v. Windsor*, 417 F.2d 1131 (4th Cir. 1969).[14]

*Phillips* was sentenced under the two-year provision and thus his standing to question any constitutional violation was doubtful. See *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 278–279, 345 F.2d 964, 968–969 (1965) (Burger, J., concurring), certiorari denied, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151.

13. Because of the conflict of circuits suggested by the Government, this opinion has been circulated to the active members of this Court and

no judge has requested a rehearing *en banc* with respect to this proposition.

14. Defendant's reliance on *United States v. Lewin*, 467 F.2d 1132 (7th Cir. 1972) and *United States v. Dellinger, supra*, is misplaced. In *Lewin*, the question refused by the district court inquired into the relationship of the potential jurors with the Better Government Association or the Chicago *Daily News*, the two sources that the Government planned to rely

■ Defendant next claims that the trial court erred in denying defendant's motion to strike the testimony of Special Agent Russell C. Koch of the Treasury Department's Bureau of Alcohol, Tobacco and Firearms, when he failed to produce the handwritten reports of his meetings with defendant. The district judge apparently credited testimony at the voir dire that the typewritten summary produced through regular procedures contained all the material that had been contained in the original handwritten notes, and the Assistant United States Attorney advised the court that after the notes were typed, they were discarded. Therefore, under this Circuit's decision in *United States v. Harris*, 542 F.2d 1283, 1292 (7th Cir. 1976), certiorari denied, 430 U.S. 934, 97 S.Ct. 1557, 51 L.Ed.2d 779, defendant received all that was required under the Jencks Act.

As in *Harris*, we recognize that all the circuits are not in accord with that holding, at least as it applies to the notes of F.B.I. agents. Although the majority view appears to be the one stated in our *Harris* opinion (see *United States v. Martin*, 565 F.2d 362 (5th Cir. 1978); *United States v. Smaldone*, 544 F.2d 456 (10th Cir. 1976), certiorari denied, 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358; *United States v. Hurst*, 510 F.2d 1035, 1036 (6th Cir. 1976); *United States v. Mechanic*, 454 F.2d 849, 856 (8th Cir. 1971), certiorari denied, 406 U.S. 929, 92 S.Ct. 1765, 32 L.Ed.2d 131; *United States v. Fioravanti*, 412 F.2d 407 (3d Cir. 1969), certiorari denied, *Panaccione v. U. S.*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88), the Ninth and District of Columbia Circuits have indicated that destruction of an agent's handwritten notes might violate the Jencks Act. See *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976); *United States v. Harrison*, 173 U.S.App.D.C.

260, 524 F.2d 421 (1975). Even if we were to adopt the D.C. Circuit's approach prospectively, however, no sanctions would be appropriate based on the lack of showing of negligence or bad faith and the considerable evidence of guilt adduced at trial. *Id.* at 273, 524 F.2d at 434. Although we therefore need not reach the Jencks Act question, apart from the interpretation of the statute we fail to understand why in the normal course these notes should not be retained so that, as Judge Sneed has written, "the question of whether an otherwise producible statement is useful for impeachment" can be left to the defendant instead of to the witness whom the defendant seeks to impeach. *United States v. Johnson*, 521 F.2d 1318 (9th Cir. 1975). Happily, we were advised at oral argument that agencies are adopting the practice of retaining the agents' handwritten notes.[15]

■ Defendant next urges that the district court did not properly handle alleged jury exposure to newspaper publicity about this case. After the jury had retired to deliberate, defense counsel called the court's attention to a Peoria newspaper article of that date stating that defendant had pleaded guilty to a murder charge in 1960 and had received a 25-year sentence. Pursuant to agreement with counsel, the district judge polled the jurors after they returned the guilty verdict, and all indicated they had not read or heard about that article.

After the verdict had been returned, two jurors told the trial judge that a third juror told them of a newspaper account of the case before jury deliberations had commenced. Consequently, the district judge conducted separate interviews with the jurors *in camera*. The juror who supposedly told other jurors about reading the newspa-

---

on almost exclusively in presenting its case. There was no indication that the jurors at the voir dire had any idea that either organization would be involved in the proof and therefore no claim was made that, as was the case here, in context the court's general inquiries could cover the subject matter of the refused questions. While the *Dellinger* opinion serves as an important reminder of the care and solicitude that

district judges should give to voir dire, it offers no controlling principle to cover the unique factual context involved here.

**15.** It is significant to note that defendant made no claim that the destroyed notes were *Brady* material. Compare *United States v. Harrison*, *supra.*

per article advised Judge Morgan that she had not read any accounts of the trial until the day after the verdict was returned, and each juror also stated that there had been no discussion by any juror during the deliberations about any news accounts as to defendant, and that none of them knew what crime had been the basis of defendant's previous felony conviction. It was the district court's function, not ours, to assess the jurors' credibility. Based thereon, he decided that no impropriety had occurred.[16] This satisfied the procedure outlined in *Margoles v. United States*, 407 F.2d 727, 735 (7th Cir. 1969), certiorari denied, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84.

While Rule 43(a) of the Federal Rules of Criminal Procedure did not require that defendant or his counsel be present during these interviews because the verdict already had been returned, defendant argues that his counsel's presence should have been required in order to assure a vigorous inquiry. Because defendant did not show or apparently even seek a hearing to try to show prejudice, and in light of the overwhelming evidence of guilt, we agree with the Fifth Circuit that while inviting counsel would have been the better practice, the error was harmless. *United States v. Parker*, 549 F.2d 998, 1000 (5th Cir. 1977).

■ Finally, defendant submits that he was entrapped as a matter of law on the ground that the whole idea for the sale of a gun by defendant was implanted in his mind by informant Durine. Obviously, however, defendant was not entrapped into receiving the firearm, the crime with which he is charged, but rather was assertedly "entrapped" into selling the firearm, a crime with which he is not charged. It is worth noting that assuming the Government's involvement in the sale might provide a theoretical basis for quashing the

evidence obtained by the sale and thus rendering the firearm inadmissible (cf. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; *Hampton v. United States*, 425 U.S. 484, 493, 96 S.Ct. 1646, 48 L.Ed.2d 113 (Powell, J., concurring)), that theory would be inapplicable here. As we read the record, the jury was presented with evidence that defendant initiated the sale rather than the Government agent, was instructed by the judge on entrapment (apparently without objection), and therefore must have chosen to believe Special Agent Koch's version of the events.

The judgment below is vacated and the cause is remanded so that defendant may receive a maximum sentence of two years' imprisonment instead of the five years previously imposed.

McMILLEN, District Judge.

I respectfully dissent from Section I of the above decision, and from the relief granted thereunder.

Batchelder was indicted and tried for the illegal receipt of a firearm under 18 U.S.C. § 922(h), *supra*, pp. 628–629. He was sentenced to five years imprisonment, as permitted by 18 U.S.C. § 924(a). Sections 922 and 924 are both part of Title IV of the Omnibus Crime Control Act of 1968. Title VII of that same Act contains another provision, codified as 18 U.S.C.App. § 1202(a). Besides defining substantive firearm offenses, it authorizes only two years imprisonment but permits a $10,000 fine, whereas § 924 permits five years custody and a fine of only $2,000. There are also differences between the offenses covered by § 922(h) and § 1202(a).

The principal difficulty posed by this case, in my opinion, is whether the co-existence of these two sections affords the prosecutor an impermissible choice of remedies.

**16.** Although defendant asserts that the fact that the district judge assertedly told the two complaining jurors that the third juror, Mrs. Jones, would not serve on any further juries indicates that he believed that she had read the article, his denial of defendant's motion for a new trial proves the contrary. Assuming it was made, his statement to the two complaining jurors may have been an effort to satisfy them that some action would be taken or it may have been a reaction to the judge's belief that even though Mrs. Jones had not read the article during her jury service, she had told the other jurors that she had done so and on that basis was unfit for further service.

I do not believe this discretionary choice violates any provision of the Constitution of the United States. Furthermore, the prosecutor's choice is not prejudicial to a defendant; the sentencing judge exercises the choice by ultimately choosing the penalty.

Contrary to the majority, I find persuasive and applicable the long line of cases, several from our circuit, which hold that where an act may violate more than one criminal statute, the government may elect to prosecute under either, even if defendant risks the harsher penalty, so long as the prosecutor does not discriminate against any class of defendants. *E. g., United States v. Beacon Brass Co.*, 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952); *United States v. Harris*, 558 F.2d 366 (7th Cir. 1977); *United States v. Phillips*, 522 F.2d 388 (8th Cir. 1975); *United States v. Brown*, 482 F.2d 1359 (9th Cir. 1973) (per curiam); *United States v. Ruggiero*, 472 F.2d 599 (2d Cir. 1973), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2772, 37 L.Ed.2d 398 (1973); *Mauney v. United States*, 454 F.2d 273 (6th Cir. 1972) (per curiam); *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 345 F.2d 964 (1965), *cert. denied*, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965); *Ehrlich v. United States*, 238 F.2d 481 (5th Cir. 1956); *United States v. Raddatz*, 77 CR 325 (N.D. Ill. Feb. 6, 1978); *United States v. Panetta*, 436 F.Supp. 114, 129 n.31 (E.D.Pa.1977). *Contra, United States v. Hairston*, 437 F.Supp. 33 (N.D.Ill.1977). Although the rule is most often stated in terms of two statutes prohibiting the same act but requiring different elements of proof, I fail to see how the prosecutor's discretion is any less when statutes also overlap on the question of punishment, if the defendant's behavior can render him subject to indictment under either section.

In fact, whether the statutes in question are identical, as stipulated by the parties (*see* majority opinion *supra* n.2), or merely overlap depends upon the perspective from which they are viewed. Title IV which contains § 922 and § 924, and Title VII which contains § 1202(a), provide distinct statutory schemes. Section 922, with thirteen subsections, places specific and severe limitations on importing, exporting, receiving, purchasing, or selling various types of firearms and ammunition. Only subsections (g) and (h) of § 922 coincide with the coverage of § 1202, and even then not completely. Subsections (g) and (h) of § 922 prohibit a fugitive from justice, as well as one "who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," from transporting or receiving, respectively, any firearm or ammunition which has been shipped in interstate commerce. Section 1202(a) prohibits not only receipt and transportation of a firearm which has been in interstate commerce, *see United States v. Bass, supra*, but also possession of such firearm. It prohibits possession of firearms also by any person who received an other than honorable discharge from the Armed Forces, has renounced his United States citizenship, or is an alien illegally in the United States.

Four courts have specifically held that the coincidence of the two statutory provisions now before the court and the resulting prosecutorial discretion do not violate any constitutional guarantee. In *United States v. Phillips, supra*, 522 F.2d 388, 393 (8th Cir. 1975), the court relied on Congress' apparent intent for both provisions to stand together and held that the prosecutor was free to choose either § 1202 or § 922. *Accord, Mauney v. United States, supra*, 454 F.2d 273, 274 (6th Cir. 1972); *United States v. Raddatz, supra*, 77 CR 325 (N.D.Ill. Feb. 6, 1978); *United States v. Panetta, supra*, 436 F.Supp. 114, 129 n.31 (E.D.Pa.1977).

The case at bar can be favorably compared with *Hutcherson v. United States, supra*, 120 U.S.App.D.C. 274, 345 F.2d 964 (1965). Defendant had been indicted and convicted under a federal statute for an offense which was also prohibited under the D.C.Code. The court held at 120 U.S.App. D.C. 277, 345 F.2d 967:

Hutcherson's next contention . . . is that the offenses denounced by the federal and local statutes are identical and that he was entitled to be prosecuted

under the latter because the penalty for violating it is less severe than that provided by the federal statute. The theory is untenable. A defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution. That choice is to be made by the United States Attorney. [footnote omitted].

In the case at bar, Judge Morgan was free to sentence Batchelder to two years or less—as prescribed under § 1202—although he could and did sentence him to five years because Batchelder had been convicted of violating § 922(h). Rather than the prosecutor usurping the judge's role in sentencing, the majority of this panel would restrict the trial judge's discretion to enforce a federal statute. The only limitation which the prosecutor's choice of § 922 placed on the judge's sentencing is that the fine was limited to $2,000, whereas § 1202 would permit up to $10,000. Indeed, the logical extension of the majority opinion, notwithstanding its footnote 5, would be a judicial melding of §§ 924 and 1202, taking the two years imprisonment from § 1202 and the § 2,000 fine from § 924(a). Such judicial legislative patchwork has been strongly disapproved by the Supreme Court. *See, e. g., United States v. Evans,* 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948).

The majority relies on three rules of construction in holding that Batchelder must be resentenced under § 1202(a). The first is that if there is ambiguity in an act of Congress, such ambiguity should be resolved in favor of lenity. It applies to the instant case only if the inclusion of two almost identical subsections of overlapping provisions in one enactment properly may be characterized as an ambiguity. The majority so finds, although it does acknowledge that on the floor of the Senate, Senator Long, who introduced § 1202 into the Act, and Congressman Machen in the House, characterized it as complementary to the scheme for gun control in Title IV (p. 629, *supra* ).

The second principle noted by the majority holds that when Congress passes a statute virtually identical to one already on the books, a court can deem the new statute as implicitly repealing the old statute. However, both statutes in this case are part of the same Act; and although § 1202 was added by an amendment, the House-Senate conference did consider it at the same time as § 922 and as part of the same Act. Both sections were signed into law simultaneously.

The third principle relied on by the majority holds that where there is doubt as to the constitutionality of a statute, it should be construed to be constitutional. Pursuant to its citation of this principle, the majority suggests that such a statutory scheme may be void for vagueness.

Although the legislative history is less clear than it could be, I do not find any ambiguity in the presence of § 922(h) and § 1202(a) in the same statute. Each section is perfectly clear, and the inference is irrebuttable that the Congressional Conference Committee and the Congress read the entire bill, were aware of the two different penalties, and found it to express the intent of the majority.

There is additional evidence that Congress is unconcerned by the overlap between Titles IV and VII of the Omnibus Crime Control Act. In 1971, the Supreme Court held in *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), that § 1202(a), like § 922(g), required proof that the weapon had passed through interstate commerce. Justice Blackmun, joined by Chief Justice Burger, dissented, stating, 404 U.S. at 356, 92 S.Ct. at 527:

The Court's construction of ·§ 1202(a), limiting its application to interstate possession and receipt, shrinks the statute into something little more than a duplication of 18 U.S.C. §§ 922(g) and (h). I cannot ascribe to Congress such a gesture of nonaccomplishment.

Yet neither the majority nor the dissenters in *Bass* suggested that prosecution under one or the other of these identical statutes would violate any constitutional prohibition. Having been put on notice that the Supreme Court read § 1202(a) and §§ 922(g)

and (h) as proscribing identical behavior, Congress in seven years has made no move to amend or repeal either section.

Unlike the majority here, we find *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), (discussed at pp. 631–633, *supra*) more significant for the issues not addressed by its majority than for the reasoning in the dissent. The *Berra* court had before it two identical criminal statutes (see n.9 in majority opinion, *supra*), but the specific issue raised was whether the trial judge committed error when he refused to instruct the jury that it could find petitioner, who had been indicted under the statute carrying the greater maximum penalty, guilty under the statute carrying the lesser penalty, on the theory that the second statute described a lesser-included offense. The Court held that a separate, albeit identical, statute did not define a lesser-included offense merely because it prescribed a lesser punishment than the statute under which petitioner was indicted. In his dissent, Justice Black urged that it was wrong to allow a prosecutor to determine the severity of the offense for which defendant would be tried. He implied that vesting such discretion in a prosecutor violated guarantees of due process, but he cited no authority for his opinion. He merely concluded, "Substitution of the prosecutor's caprice for the adjudicatory process is an action I am not willing to attribute to Congress in the absence of clear command." 351 U.S. at 140, 76 S.Ct. at 691 (Black, J., with Douglas, J., dissenting).

A dissenting opinion, even by a respected constitutional scholar such as the late Justice Black, is weak authority on which to hold a statutory scheme to be of "questionable constitutionality." That the Court did not reach the issue addressed in the dissent leads unavoidably to the inference that the other justices saw no significant constitutional question raised. *Accord, Hutcherson v. United States, supra*, 120 U.S.App.D.C. 274, 279 & n.3, 345 F.2d 964, 969 & n.3 (1965) (Burger, J., concurring).

In sum, I do not agree that the statutory scheme here under scrutiny is either ambiguous or unconstitutional. Congress explicitly afforded federal prosecutors two separate routes by which to prosecute persons who receive dangerous weapons. The violator knows the penalties he may be subjected to should he commit the offense; and, upon indictment, he is unambiguously apprised of the maximum fine and prison term by the appropriate statutory citation. The prosecutor's exercise of discretion in choosing whether to seek an indictment under § 922(h) or § 1202(a) is so limited, and so easy for the sentencing judge to mitigate when the more punitive section is used, that I see no opportunity for, nor is there before us an allegation of, abusive or arbitrary exercise of prosecutorial discretion. I would affirm.